**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINE SLOWINSKI, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 23-cv-03207 |
| HP HOOD LLC, | ) ) | Judge Andrea R. Wood |
| Defendant. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Christine Slowinski alleges that Defendant HP Hood LLC ("Hood") engaged in misleading labeling practices with regards to its Planet Oat oatmilk products ("Products"). Even though the milk cartons are tagged with the label "no artificial preservatives," the milk contains dipotassium phosphate ("DKP"), which Slowinski claims is a preservative. As a result, Slowinski brings this action on behalf of herself and a putative class, asserting claims against Hood for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*., as well as claims of common law fraud and unjust enrichment. Hood now moves to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16.) Alternatively, Hood seeks dismissal of all claims asserted on behalf of non-Illinois residents pursuant to Rule 12(b)(6) and all claims for injunctive relief pursuant to Rule 12(b)(1). (*Id*.) For the reasons stated below, Hood's motion is granted in part and denied in part.

## BACKGROUND

For purposes of the motion to dismiss, the Court accepts the facts in the Complaint as true and views them in the light most favorable to Slowinski as the non-moving party. *E.g.*,

*Anicich v. Home Depot USA, Inc.*, 852 F.3d 643, 648 (7th Cir. 2017). The Complaint alleges as follows.

This case arises from Slowinski's challenge to the labeling of certain non-dairy milk products sold under Hood's "Planet Oat" brand. Slowinski alleges that six varieties of the Products are falsely marketed as containing "no artificial preservatives." (Compl. ¶ 6, Dkt. No. 1-1.) The crux of her Complaint is that the presence of DPK, an inorganic compound included in the Products' ingredient lists, renders that representation false or misleading. (*Id*. ¶¶ 1, 16–24.)

According to Slowinski, DKP is a synthetic chemical additive that functions as a preservative by retarding deterioration of foods. (*Id*. ¶¶ 15–16.) She provides a chart depicting the chemical manipulations that separate DKP from natural phosphate rocks. (*Id*. ¶ 13.) Slowinski contends that reasonable consumers interpret the "no artificial preservatives" label to mean the Products contain no such substances, so the presence of DKP defeats that expectation. (*Id*. ¶¶ 18, 22.) She further alleges that reasonable consumers understand terms based on common parlance, such that "artificial" means "made by people," and "preservative" means "a chemical used to stop food from decaying." (*Id*. ¶¶ 19–20.) Slowinski claims that she relied on the "no artificial preservatives" label when deciding to purchase the Products from a Jewel-Osco store located in Schaumburg, Illinois on January 29, 2023. (*Id*. ¶¶ 17, 24.) Had she known that the Products contained DKP, she would not have purchased them. (*Id*. ¶¶ 26–27.)

Based on these allegations, Slowinski asserts claims against Hood under the ICFA (Count I), along with claims of common law fraud (Count II) and unjust enrichment (Count III).Slowinski claims injuries including monetary loss for the price premium, wasted time, stress, loss of autonomy in choosing the type and quality of food she consumes, and diminished trust in product labeling. (*Id*. ¶¶ 25, 30, 34.) She seeks to represent a nationwide class of purchasers, as

well as a subclass of Illinois consumers, who bought the Products between April 10, 2018 and April 10, 2023. (*Id.* ¶¶ 35–36.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Here, Hood argues that Slowinski's claims should be dismissed because they are preempted by the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343-1, and fail to satisfy federal pleading standards. Hood also contends that Slowinski's claims on behalf of non-Illinois consumers should be dismissed and that she lacks standing to seek injunctive relief.

### I. Preemption

Federal preemption is an affirmative defense for which the defendant bears the burden of proof. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Federal preemption stems from the Supremacy Clause of the U.S. Constitution, which establishes that federal law "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "The underlying rationale of the pre-emption doctrine . . . is that the Supremacy Clause invalidates state laws that interfere with or are contrary to, the laws of congress." *Chi. & N. W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (internal quotation marks omitted).

Hood argues that Slowinski's claims are preempted by the FDCA, which authorizes the U.S. Food and Drug Administration ("FDA") to regulate food labeling. The FDCA contains an express preemption provision that prohibits states from establishing any requirement for the labeling of food that is "not identical" to what is required by the FDCA. 21 U.S.C. § 343-1. Put another way, "states may impose requirements for food labeling *identical* to those put in place by [the FDA], but they may not impose a requirement that differs from the applicable labeling regulation or regulations." *Franco v. Chobani, LLC*, 789 F. Supp. 3d 584, 605 (N.D. Ill. 2025). The FDA classifies DKP as a sequestrant—not a preservative. 21 C.F.R. § 182.6285. Thus, Hood contends that allowing Slowinski's claims to proceed would impose a labeling requirement inconsistent with federal law.

But Hood's argument overstates the scope of federal preemption. The Seventh Circuit has distinguished between claims in which a plaintiff "attempt[s] to use state law to require that disclosure language be *added* to a food label when federal regulations did not explicitly require it," which are preempted, and those in which the plaintiff "seek[s] only to stop defendants from voluntarily adding deceptive language to federally permitted labels," which are not preempted. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 484 (7th Cir. 2020). Under the Seventh Circuit's approach, "[a] state law claim is preempted if it seeks to impose a new labeling requirement, but it is not preempted if it challenges a voluntarily added label that has not been authorized by the FDA." *Franco*, 789 F. Supp. 3d at 606. In this case, Slowinski claims that Hood's voluntary front-label statement—that the Products contain no artificial preservatives—is deceptive in light of DKP's alleged preservative function. With these allegations, her claim is not preempted.

4

Moreover, the FDA has not definitively addressed whether DKP *may* function as a preservative under certain conditions. While it categorizes DKP as an emulsifier salt, nutrient supplement, PH control agent, sequestrant, and stabilizer, such categorization does not preclude the possibility that DKP could also serve a preservative role. *See* 21 C.F.R. Part 182, Subpart G n.1 (noting that "no attempt has been made to designate those sequestrants that may also function as chemical preservatives"). The FDA's definitions leave room for overlap: sequestrants include "[s]ubstances which combine with polyvalent metal ions to form a soluble metal complex, to improve the quality and stability of products," and a chemical preservative is "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 170.3(o)(26); 21 C.F.R. § 101.22(a)(5). Given that sequestrants can inhibit spoilage through metal ion binding, it is not improbable that a single compound—like DKP—could function as both a sequestrant and a chemical preservative.

In sum, Slowinski's preemption defense fails at the pleadings stage. Her claim turns not on imposing new labeling obligations, but on whether Hood's voluntarily added language may have misled reasonable consumers. Moreover, whether DKP actually functions as a preservative in these Products is a factual question not suited for resolution at the motion to dismiss stage.

## II.     Sufficiency of the Pleadings

Because Slowinski's claims sound in fraud, in addition to the requirements of Federal Rule of Civil Procedure 8(a), they are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). That rule requires that the plaintiff "state with particularity the circumstance constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, a complaint

must typically satisfy the "who, what, when, where, and how" of the alleged deception. *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 99 F.4th 928, 944 (7th Cir. 2024). That said, the Seventh Circuit has cautioned against applying this standard too rigidly and has emphasized that the required level of detail depends on the context. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).

Hood moves to dismiss all three of Slowinski's claims—the ICFA, common law fraud, and unjust enrichment claims—as insufficiently pleaded. Specifically, Hood argues that all these theories require Slowinski to plead an actual misrepresentation of fact, but she is unable to do so since the FDA, and other authoritative sources define DKP as a non-preservative. The Court addresses each of Slowinski's theories in turn.

### A.     Count I—ICFA

To state a claim under the ICFA, a plaintiff must allege: (1) a deceptive or unfair act or promise by the defendant, (2) the defendant's intent that the plaintiff rely on the deceptive or unfair act, (3) that the deceptive or unfair act occurred during a course of conduct involving trade or commerce, and (4) actual damages as a result of the deceptive or unfair act. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). Under the ICFA, "[a] label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). This "reasonable consumer" standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell*, 982 F.3d at 474–75 (internal quotation marks omitted). In applying the standard, a court "should take into account all the information available to consumers and the context in which that information is provided and used." *Id.* at 477. "What matters most is how real consumers

understand and react to the advertising." *Id.* at 476. Typically, whether a statement would deceive a reasonable consumer is an issue of fact. *E.g.*, *Sneed v. Ferrero USA, Inc.*, 656 F. Supp. 3d 777, 783 (N.D. Ill. 2023).

Here, Slowinski alleges that she purchased the Products based on the front-label representation claiming they contained "no artificial preservatives" and would not have done so had she known the products contained DKP. She further cites articles supporting her position that DKP has preservative qualities, since it slows down the deterioration of the Products by preventing the growth of certain bacteria and stabilizing emulsions to extend shelf life. (Compl. ¶ 14.) According to Slowinski, reasonable consumers understand the phrase "no artificial preservatives" to mean the product does not contain such ingredients. And she contends that Hood intended that consumers rely upon said false affirmative representations.

This Court concludes that Slowinski's allegations are sufficiently specific and plausible. Another court in this District addressed substantially similar allegations in a case also brought by Slowinski. *Slowinski v. Drip Drop Hydration, Inc.*, No. 24 CV 5421, 2025 WL 524118, at *3 (N.D. Ill. Feb. 18, 2025). There, Slowinski alleged that a powdered drink mix disclaimed the presence of artificial preservatives even though it contained citric acid that functioned as a preservative. *Id.* The district court reasoned that "even if [the defendant was] correct that the citric acid does not function as a preservative in the [p]roducts, a statement that is literally true can still be misleading.". *Id.* (internal quotation marks omitted). The same reasoning applies here.

While Hood contends that DKP is not classified as a preservative by the FDA and that its function in the Products is not to preserve, whether DKP is, in fact, a preservative or functions as such in the Products is not a dispute amenable to resolution at the pleadings stage. What matters

at this early stage in the proceedings is whether Slowinski has plausibly alleged that the label could mislead a significant portion of reasonable consumers. Slowinski has done so. *See Kahn v. Walmart Inc.*, 107 F.4th 585, 595 (7th Cir. 2024) ("[R]easonable consumer behaviors are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." (internal quotations omitted)).

As for actual damages, a plaintiff may adequately plead pecuniary loss under the ICFA by alleging that "the seller's deception deprive[d] the plaintiff of the benefit of her bargain by causing her to pay more than the actual value of the product." *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)).  At the pleadings stage, a plaintiff need not provide detailed economic analyses or price comparisons; it is enough for a plaintiff to allege that the deception caused her to overpay or buy a product she otherwise would not have purchased. *Gibson v. Albertsons Cos., Inc*., 754 F. Supp. 3d 793, 810 (N.D. Ill. 2024) (collecting cases). Here, Slowinski alleges that she would not have purchased the Products had she known they contained DKP, that she relied on the "no artificial preservatives" label in making her purchasing decision, and that she was deprived of the benefit of her bargain when she paid a price premium for the Products. These allegations are sufficient to plausibly support a theory of actual pecuniary loss. Accordingly, Count I may proceed.

### B.   Count II—Common Law Fraud

Common law fraud in Illinois requires a plaintiff to allege: (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance upon the truth of the statement; and (5) the plaintiff's damages resulting from reliance on the statement. *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018). Notably, the

ICFA "affords broader protection to consumers than the cause of action available under common-law fraud." *Letoski v. Coca-Cola Co.*, 753 F. Supp. 3d 650, 664 (N.D. Ill. 2024) (citing *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 751 (Ill. 1994)). "'Intent' under the [ICFA] means 'that the defendant intends for the plaintiff to rely on the deception' rather than 'the defendant's intent to deceive' under common-law fraud." *Id.* (quoting *Ash v. PSP Distrib., LLC*, 226 N.E.3d 748, 754 (Ill. App. Ct. 2023)).

Even though her ICFA claim survives, Slowinski's common law fraud claim fails due to her failure to plead intent adequately. While Rule 9(b) does permit knowledge and intent to be pleaded generally, *see* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."), a plaintiff still must include in the complaint something more than conclusory statements and speculation. *See Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 731 (N.D. Ill. 2022) (collecting cases). Slowinski does not claim that Hood **knew** DKP functioned as a preservative, nor that it believed the "no artificial preservatives" statement was false or misleading at the time it was made. She only alleges that, on information and belief, Hood employs professional chemists to create the chemical formulas of the Products, and therefore she postulates that Hood knew or should have known that DKP retards the deterioration of food products and is therefore a chemical preservative. (Compl. ¶ 33.) That is not enough to plead an intent to deceive. Accordingly, Count II is dismissed.

### C.    Count III—Unjust Enrichment

Under Illinois law, unjust enrichment is not a standalone cause of action. Rather, it is derivative of another valid underlying claim. *Flores v. Aon Corp.*, 242 N.E.3d 340, 356 (Ill. App. Ct. 2023). An unjust enrichment claim will therefore "stand or fall" with the related claim. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Here, Slowinski alleges that

Hood was unjustly enriched by retaining the revenues derived from marketing and selling deceptively labeled products. Because those allegations rest on the same conduct underlying the ICFA claim—and because the ICFA claim survives—her unjust enrichment claim may proceed.

### III.    Claims on Behalf of Non-Illinois Consumers

Hood also seeks dismissal of Slowinski's class claims to the extent they are brought on behalf of non-Illinois consumers. Slowinski counters that dismissal on this basis would be premature and improper.

To bring claims under the ICFA and for unjust enrichment, Slowinski must establish a connection between the challenged conduct and the state of Illinois. Illinois courts have consistently held that non-residents cannot assert ICFA claims unless the alleged misconduct occurred primarily and substantially within Illinois. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009). Here, Slowinski does not allege that any conduct relevant to the claims of non-Illinois consumers took place in Illinois. Nor does she allege that Hood's labeling decisions, marketing strategies, or other conduct giving rise to liability were centered in Illinois. Absent such allegations, Slowinski cannot represent a nationwide class under Illinois law.

Accordingly, the class allegations are dismissed to the extent they purport to assert claims on behalf of non-Illinois purchasers. This ruling does not preclude Slowinski from seeking certification of a class consisting of Illinois consumers who purchased the Products during the proposed class period.

10

### IV.    Injunctive Relief

Finally, Hood contends that Slowinski lacks Article III standing to seek injunctive relief because she does not plausibly allege a risk of future harm. In response, Slowinski cites *Le v. Kohl's Department Stores, Inc.*, where the court found the plaintiff had standing based on allegations that a deceptive advertising scheme was "company-wide, pervasive, and continuous." 160 F. Supp. 3d 1096, 1109 (E.D. Wis. 2016). The court in *Le* emphasized the plaintiff's "realistic fear" that the misleading conduct would continue to cause economic harms to consumers. *Id.* at 1111.

But the question under Article III is not whether future harm to **someone** is likely; it is whether **this plaintiff** faces a real and immediate threat of future injury. *See Camasta,* 761 F.3d at 740–41 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974))). Merely alleging a potential future injury is too speculative. *Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867, 878 (N.D. Ill. 2024) ("A 'fool me once' plaintiff is not at risk of suffering a future 'fool me twice' injury."). In fact, the Complaint makes clear that Slowinski is very unlikely to ever repurchase the Product and is therefore not at risk of being misled again. Accordingly, Slowinski lacks standing to pursue injunctive relief in federal court, so that portion of her claim is dismissed.[1]

### CONCLUSION

For the foregoing reasons, Hood's motion to dismiss (Dkt. No. 16) is granted in part and denied in part. The motion is granted with respect to the common law fraud claim in Count II, as

---

[1] This ruling does not address Slowinski's ability to seek injunctive relief in state court, where standing requirements may differ. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 622 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020).

well as with respect to the nationwide class allegations and the request for injunctive relief. The dismissals are without prejudice to Slowinski seeking leave to file an amended complaint that remedies the deficiencies as to the dismissed claims.

ENTERED:

Dated: March 31, 2026

Andrea R. Wood
United States District Judge